**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Standorf, | No. CV-19-04700-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Christie's Cabaret, *et al.*, | |
| Defendants. | |

At issue is Defendant Out West Ventures, Inc.'s ("OWV") renewed Motion for Summary Judgment (Doc. 146), to which Plaintiff Kelly Standorf filed a Response (Doc. 148), and OWV filed a Reply (Doc. 154). With leave of Court, OWV together with Defendant Steve Cooper filed a Supplement (Doc. 169), to which Plaintiff filed a Response (Doc. 177) and Defendants filed a Reply (Doc. 180). Also at issue is Plaintiff's Motion for Summary Judgment (Doc. 167), to which Defendants filed a Response (Doc. 178) and Plaintiff filed a Reply (Doc. 181). The Court resolves these Motions without oral argument. LRCiv 7.2(f).

**I.    BACKGROUND**

**A.    Factual Background**

Mr. Cooper owns multiple gentlemen's clubs in the United States. In 2002, his business, OWV, opened a club in Tempe, Arizona under the tradename Christie's Cabaret ("Christie's Tempe" or the "Club"). (Doc. 146 at 4.) Plaintiff worked as a House Mom within Christie's Tempe for 16 years. (Doc. 148 at 2.) House Moms are individuals in the

gentlemen's club industry who are granted access to clubs and provide services to the entertainers. (Doc. 146 at 3.) As such, Plaintiff ran her own business inside Defendants' Club providing hair, make up, and other beauty products and services to the entertainers in exchange for tips from them. (Doc. 146 at 2; Doc. 148 at 2.) Plaintiff did not receive any payments from Defendants for providing services within their premises. (Doc. 148 at 2.) Plaintiff alleges that after a couple years, managers at Christie's Tempe relied on Plaintiff to do other tasks that fell outside the scope of typical House Mom work, including: "(1) auditioning Christie's entertainers; (2) providing orientation to new dancers; (3) assigning lockers to entertainers and being the last one out of the locker room at night; (4) calling entertainers in to work at the Club; (5) assisting entertainers with new hire paperwork; (6) terminating an entertainer's contract with the Club; (7) tracking entertainers' house fee[s]; (8) tracking house fee and merchandise payments; [and] (9) accounting for what fees entertainers owed the Club" (collectively referred to as "non-traditional House Mom duties"). (Doc. 148 at 3–4.) Plaintiff did not receive payment from Defendants for performing the non-traditional House Mom duties. (Doc. 148 at 4.)

To support her claims alleging Defendants violated the federal Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, and Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-350 *et seq.* and A.R.S. § 23-362 *et seq.*,[1] Plaintiff relies on, among other things, the deposition testimony of a former Christie's Tempe entertainer, former Christie's Tempe employees (Jennie Schell, Jon Gates, Belinda Speth, and Kimberly Hood), and a different House Mom who worked at Defendants' clubs. (Doc. 148 at 4.) In particular, Ms. Schell stated,

> I'm pretty sure I remember [the managers] saying something about [Plaintiff] was supposed to get all the house fees and make sure all the girls paid. I know that was her role, to make sure all the girls paid their house fees. . . . [S]he had to chase the girls around. If they didn't pay, then she had to make sure that they paid.

(Doc. 148 at 4.)

---

[1] Plaintiff abandoned her claim for unjust enrichment upon remand to state court, as the Court details *infra*.

- 2 -

On numerous occasions, Defendants contend, Mr. Cooper instructed Plaintiff to cease performing tasks such as being involved in auditions and orientations, filling out paperwork, and handling Club money. (Doc. 146 at 7.) Defendants urge that Plaintiff understood she was not required to help with additional tasks but wanted to anyway. (Doc. 146 at 4.) Defendants claim during the sixteen years Plaintiff operated her business in Defendants' Club, she never requested Defendants compensate her for any tasks she performed in the Club. (Doc. 146 at 5.) Defendants argue some of the non-traditional House Mom duties Plaintiff performed were to benefit her own business. (Doc. 146 at 4.) For example, collecting house fees from entertainers and delivering them to the Club's register increased the likelihood Plaintiff would receive a tip because the entertainers were able to attend to patrons and earn additional income. (Doc. 146 at 4.) Further, keeping a sign-in sheet, Defendants contend, helped Plaintiff keep up with the entertainers, and attending orientations allowed House Moms to begin building relationships with entertainers. (Doc. 146 at 8–9.) Plaintiff states that each time Mr. Cooper instructed Plaintiff to stop performing non-traditional House Mom duties she would cease; however, within a few weeks, club managers would instruct Plaintiff to take those duties on again. (Doc. 112 at 5.)

Plaintiff averred she made $8,000 per month operating her business within Christie's Tempe. (Doc. 91 ¶ 19.) Defendants offered Plaintiff a job in their corporate office, but Plaintiff turned it down, stating she would not make enough money. (Doc. 91 ¶ 19; Doc. 146 at 4.) On June 16, 2018, Plaintiff stopped conducting business at Christie's Tempe after Mr. Cooper retracted her permission to do so. (Doc. 90 at 4–5; Doc. 146 at 5.)

**B.      Procedural Background**

Plaintiff filed this lawsuit in state court on June 10, 2019 (Doc. 1-1), and Defendants removed the case to this Court on July 12, 2019 (Doc. 1). Although Plaintiff originally named Mr. Cooper and a fictitious entity called Christie's Cabaret of Glendale ("CCOG") as Defendant, she only named OWV—an entity owned and operated by Mr. Cooper (Doc. 168 ¶ 1)—as Defendant in the Second Amended Complaint (Doc. 93), the operative

pleading.² The parties cross-moved for summary judgment in 2021, and the Court granted summary judgment in favor of Defendants on Plaintiff's FLSA claim, concluding that she did not produce reliable evidence from which a reasonable jury could conclude that she worked as an employee for Defendants within the statutory period—from June 10, 2017 to June 10, 2019—or that Defendants acted with the requisite willfulness to extend the statute of limitations period from two to three years. (Doc. 155.) The Ninth Circuit Court of Appeals reversed on both issues. (Doc. 163.)

On remand, this Court held a status conference. (Doc. 165.) Although the Court had remanded the state law claims to state court upon dismissal of the FLSA claim (Doc. 155), the parties reported that the state court had granted a stay as to the state law claims. Defendants then removed the pending state court action to this Court. (Case No. CV-23-00474-PHX-JJT.) The Court consolidated the single state law claim in that action—for violations of the AMWA (Case No. CV-23-00474-PHX-JJT, Doc. 1–2)—into this action. In sum, two claims are pending before the Court, for violation of the FLSA and the AMWA.

Because the Court had decided the first summary judgment motions on only two of the issues the parties presented, the Court allowed the parties to file additional or supplemental motions for summary judgment, which are now before the Court.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

² Plaintiff conceded in the March 16, 2023 hearing that CCOG was an improper Defendant, so the Court dismisses any claims against CCOG. (Doc. 165; 03/16/2023 Hr'g Tr. at 10–11.)

242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

III. ANALYSIS

    A.    **FLSA Claim**

As the Court alluded to *supra*, the Ninth Circuit found the evidence that, within the two-year statutory period, a Christie's Tempe manager sent Plaintiff a text message

thanking her for "holding the fort down" was sufficiently unambiguous and reliable to be probative evidence that Plaintiff was an employee of Defendants under the FLSA, precluding summary judgment in favor of Defendants on the issue. (Doc. 163.) Likewise, a majority of the Ninth Circuit panel determined that "[t]here remains a genuine dispute of material fact as to whether OWV and Cooper's violation"—if a jury were to find they violated the FLSA—"was willful," which would trigger the three-year statute of limitations period for Plaintiff's FLSA claim. (Doc. 163.) And although Defendants attempt to distinguish the acts of Mr. Cooper from those of OWV as Plaintiff's alleged employer, the Ninth Circuit's Memorandum Decision cites facts that court found were probative to finding Mr. Cooper acted as Plaintiff's employer, precluding summary judgment in his favor. (Doc. 163.)

Plaintiff now spills much ink arguing that she is entitled to summary judgment on the subject of whether she was Defendants' employee, but her briefing simply points out how many genuine issues of material fact remain. Indeed, Plaintiff asks the Court to weigh the evidence in her favor (Doc. 167), which is precisely what the Court may not do on summary judgment. The Court therefore will deny Plaintiff's Motion as it pertains to the question of whether Plaintiff was Defendants' employee under the FLSA.

In their Supplement, Defendants argue without citation to applicable legal authority that the Court should apply the doctrine of equitable estoppel to conclude Plaintiff is not entitled to wages as an employee of Defendants, but the evidence is not sufficient for the Court to conclude as a matter of law that the doctrine applies in this instance. Similarly, Defendants contend that the *in pari delicto* doctrine—that "the parties to the wrongful act are equally at fault," *Brand v. Elledge*, 360 P.2d 213, 216 (Ariz. 1961)—precludes Plaintiff's entitlement to an employee's wages. But Defendants fail to show no genuine issue of material fact exists as to the parties' fault. Many of the same factual issues underpinning the inquiry whether Plaintiff was Defendants' employee apply to the analysis of these two doctrines, such as balancing Plaintiff's testimony that she "did what she was told by her bosses" with Defendants' evidence that they repeatedly told Plaintiff not to

engage in non-traditional House Mom duties. Accordingly, the Court will deny the parties' cross-motions for summary judgment as to Plaintiff's FLSA claim, and that claim and the associated question of willfulness will proceed to trial.

### B. Arizona Minimum Wage Act Claim

As for the AMWA claim, Plaintiff is correct that the standard for determining whether an individual is an employee under the AMWA differs from the standard under the FLSA. The Arizona Supreme Court has adopted the Restatement (Second) of Agency in determining if an individual is an employee. *Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 141 (Ariz. 1990). In *Santiago*, that Court decided if a genuine issue of fact existed as to whether a newspaper company could be liable as an employer for injuries caused by a newspaper delivery man classified as an "independent contractor." *Id.* The Restatement of Agency defines an employee, or servant, as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Id.* (quoting Restatement of Agency § 220 cmt. c). In deciding the "objective nature of the relationship," that Court stated a fact finder must evaluate a number of criteria, including:

1. The extent of control exercised by the master over details of the work and the degree of supervision;
2. The distinct nature of the worker's business;
3. Specialization or skilled occupation;
4. Materials and place of work;
5. Duration of employment;
6. Method of payment;
7. Relationship of work done to the regular business of the employer;
8. Belief of the parties.

*Id.* at 141–42.

With regard to the first criterion—the extent of control exercised by the master—a fact finder must look to "indicia of control," none of which by itself is dispositive. *Id.* at 143 (citing *Cent. Mgmt. Co. v. Indus. Comm'n of Ariz.*, 781 P.2d 1374, 1377 (Ariz. Ct. App. 1989)). Those include the criteria listed above as well as "who furnishes the necessary equipment, the right to hire and fire, [and] who bears responsibility for worker's

compensation insurance." *Cent. Mgmt. Co.*, 781 P.2d at 1377 (citing *Home Ins. Co. v. Indus. Comm'n,* 599 P.2d 801, 803 (Ariz. 1979)). The Arizona Supreme Court also noted with approval the 20-factor list used by the Internal Revenue Service in determining whether an individual is an employee. *Santiago*, 794 P.2d at 145 & n.6.

"A strong indication of control is an employer's power to give specific instructions with the expectation that they will be followed." *Id.* at 142–43. In *Home Insurance Company*, the Arizona Court of Appeals held that a delivery driver could reasonably be expected to meet established departure and arrival times and not deviate from well-recognized delivery routes without creating an employment relationship, because the right-to-control test "require[s] sufficient control over the *method* of reaching a desired result as opposed to merely controlling the end result of the work." 599 P.2d at 804; *see also Cent. Mgmt. Co.*, 781 P.2d at 1376–77 ("If the right to control the details goes no further than is necessary to ensure a satisfactory end result, it does not establish employment." (internal quotation and citation omitted)).

Contrary to Plaintiff's argument that the evidence going to each factor "weighs in favor of employee status" (Doc. 167 at 19–21)—again, the improper standard in a request for summary judgment—substantial evidence shows that Plaintiff was not an employee of Defendants. For example, evidence "weighs in favor of" Defendants as to the method of payment (Doc. 147 ¶ 5 (Plaintiff's independent business was paid through "tips and other fees [from entertainers] for providing [entertainers] with services")), the belief of the parties (Doc. 147 ¶ 20 (Mr. Cooper and OWV managers "made it clear to [Plaintiff] that she was not required to do anything for the Club, and [Plaintiff] would state she understood but wanted to help out and do them anyway")), and Plaintiff's furnishing of her own supplies and control of the method of reaching the desired result of her work (Doc. 147 ¶¶ 8–18 (Defendants neither trained Plaintiff nor determined what her role entailed; she was not subject to Club rules including prohibitions on drinking alcohol, smoking marijuana, and using a cell phone; and she brought her own merchandise, products and supplies to support her work)). For her part, Plaintiff conclusorily testifies that she did what

certain managers told her to do. As with the FLSA claim, the Court concludes that sufficient issues of material fact exist precluding summary judgment on the AMWA claim.

### C.    Relation Back

Finally, the parties cross-move for summary judgment as to the date from which the statute of limitations period is determined for claims against OWV: the date of Plaintiff's initial Complaint—June 10, 2019—or the date on which Plaintiff named OWV as Defendant in the Second Amended Complaint—December 8, 2020. Plaintiff argues that the Court should apply Federal Rule of Civil Procedure 15(c), allowing relation back of pleading amendments. In an instance such as this where a plaintiff amends the complaint to add claims against a new party, Rule 15(c)(1)(C) provides that the amended complaint relates back to the date of filing of the original complaint if the new party brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." The plaintiff must also meet the requirement in Rule 15(c)(1)(B) that "the amendment asserts a claim or defense that arose out the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[3]

The requirements for relation back of Plaintiff's Second Amended Complaint to the filing of the original Complaint are met here. Plaintiff named Mr. Cooper as Defendant in the original Complaint and raised the allegations against Christie's Tempe. Mr. Cooper thus knew or should have known the action was against OWV, an entity he owns and operates. And the Second Amended Complaint asserts the same claims as the prior complaints. Accordingly, the limitations period for claims against OWV is calculated from the filing of the Complaint, June 10, 2019.

---

[3] In certain instances, a federal court may refer to state law instead of federal law regarding relation back. Because federal and Arizona law are substantively identical in this area, the Court need not analyze or apply Arizona law separately here. *See* Fed. R. Civ. P. 15(c); Ariz. R. Civ. P. 15(c); *Flynn v. Campbell*, 402 P.3d 434, 438 (Ariz. 2017) (interpreting Arizona Rule 15(c) uniformly with Federal Rule 15(c), noting that Arizona Rule 15(c) "is modeled after its federal counterpart").

**IT IS THEREFORE ORDERED** denying Defendant Out West Ventures, Inc.'s Motion for Summary Judgment (Doc. 146) as renewed by the Supplement (Doc. 169).

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff Kelly Standorf's Motion for Summary Judgment (Doc. 167). The filing of Plaintiff's Second Amended Complaint relates back to the filing of the original Complaint under Federal Rule of Civil Procedure 15(c)(1). Plaintiff's Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that this matter will proceed to trial, and the Court will set a pretrial status conference by separate Order.

Dated this 20th day of March, 2024.

Honorable John J. Tuchi
United States District Judge